Ella THOMPSON, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (SACRED HEART MEDICAL CENTER), Respondent (Two Cases).**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 1998.
Decided Oct. 30, 1998.
Reargument Denied Dec. 15, 1998.

---

E.L. Hannaway, Philadelphia, for petitioner.

Peter M. Harrison, Philadelphia, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

The critical issue that this court must determine is, in a termination proceeding where the Employer's medical witness does not clearly state that the claimant is "fully recovered," whether or not the medical evidence is equivocal where the Employer's medical witness, in a medical report, released Claimant to *only* light duty with significant restrictions and later testified that the restrictions were for an accommodation to the Claimant's subjective complaints, and that the restrictions were not work-related.

Ella Thompson (Claimant) petitions this court to review two orders of the Workers' Compensation Appeal Board (Board). The Board affirmed a Workers' Compensation Judge's (WCJ) granting of Sacred Heart Medical Center's (Employer) Termination Petition and in 'the second order, the Board affirmed the WCJ's granting of the Employer's subsequent withdrawal of it's Modification Petition for the same injury. We reverse the termination of the Claimant's benefits and vacate the order permitting the Employer's withdrawal of the Modification Petition. Since there was no evidence introduced and no hearings held on the merits to support any conclusion of modification of benefits, we remand the matter to the Board for further proceedings consistent with this opinion.

On October 30, 1990, Claimant injured her neck and back while lifting a 300–pound patient in the performance of her duties as a mental health assistant. Thereafter, Claimant discontinued working and Employer issued a Notice of Compensation Payable, permitting Claimant to collect total disability benefits while off work for a cervical strain.

Claimant was off work on disability when, at the Employer's request, Noubar Didizian, M.D., an orthopedic surgeon, examined Claimant on March 26, 1991 and again on August 14, 1991. In March of 1991, Dr. Didizian found that the Claimant was still not able to return to work. Dr. Didizian examined Claimant again on August 14, 1991, from which he produced a medical report, in the nature of a Physical Capacities Checklist.[1]

---

1. Dr. Didizian's August 14, 1991 Physical Capacities Checklist was entered into evidence as Defendant's Exhibit 2 in Dr. Didizian's 8/16/92 deposition, at which time Dr. Didizian testified about the document. The Claimant, Employer and WCJ have referred to this Physical Capaci-

Based on Dr. Didizian's August 14, 1991 medical report, the Employer filed a Termination Petition on February 5, 1992. On March 2, 1995, while the Termination Petition was pending, the Employer filed a Modification Petition, requesting supersedeas, since the only job available to Claimant provided less than her time of injury wage. Both petitions were assigned to the same WCJ. On May 4, 1995, WCJ held a supersedeas hearing regarding the Modification Petition.

Before ruling on the Employer's supersedeas request, on June 26, 1995, the WCJ granted the Employer's Termination Petition, effective as of August 14, 1991. The WCJ found the Claimant's testimony not credible regarding her physical capabilities, and found the testimony of Dr. Didizian credible and convincing, finding that the doctor opined that the Claimant had fully recovered from her employment injury as of August 14, 1991.

On July 6, 1995, the WCJ denied Employer's supersedeas request made in connection with it's Modification Petition. On July 11, 1995, the Employer requested that the Modification Petition be withdrawn, and the WCJ granted the Employer's withdrawal of the Modification Petition on July 18, 1995.[2]

Claimant appealed to the Board the WCJ's decision terminating her benefits and the WCJ's granting of the withdrawal of Employer's Modification Petition. On appeal, the Board affirmed both decisions. The Claimant's appeal of the Board's decision to terminate her benefits (No. 1887 C.D.1997) and the Board's affirmation of the Employer's withdrawal of the Modification Petition (No. 1888 C.D.1997) were consolidated pursu-

ant to an order of this court dated November 19, 1997.

■ Our appellate review in a workers' compensation action, where the Board takes no additional evidence and both parties presented evidence before the WCJ is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *U.S. Airways v. Workers' Compensation Appeal Board (Johnston)*, 713 A.2d 1192 (Pa. Cmwlth.1998).

On appeal, Claimant argues that the Employer did not meet its burden of proof for a termination petition. Claimant raises the issues that the record does not contain sufficient evidence to support WCJ's conclusions of law to terminate benefits and, because his decision is "not well-reasoned," he therefore committed error.

■ Because the WCJ is the ultimate finder of fact and exclusive arbiter of credibility and evidentiary weight,[3] such findings will not be disturbed if supported by such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[4] However, in this instance, we are compelled to agree with the Claimant. The testimony of the Employer's medical witness, Dr. Didizian, is equivocal and does not support a termination of benefits as outlined in *Udvari v. Workmen's Compensation Appeal Board (USAir)*, 550 Pa. 319, 705 A.2d 1290 (1997).

■ In order to obtain a termination of the claimant's benefits, the employer must prove by substantial medical evidence that all disability has ceased.[5] This burden is consid-

---

ties Checklist as Dr. Didizian's 8/14/91 medical report.

2. The certified record shows that prior to the Employer's request for withdrawal of the modification petition, the only proceedings on the merits of the modification of benefits was the postponement of a 5/4/95 hearing. Therefore, no evidence was submitted and no hearings on the merits of the modification petition were ever held.

3. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth.1995).

4. *See Harding v. Workers' Compensation Appeal Board (Arrowhead Industrial)*, 706 A.2d 896 (Pa. Cmwlth.1998); *Jordan v. Workmen's Compensation Appeal Board (Consolidated Elect. Distribs.)*, 550 Pa. 232 704 A.2d 1063 (1997).

5. Section 413 of The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772. *See also, Battiste v. Workmen's Compensation Appeal Board (Fox Chase Cancer Ctr.)*, 660 A.2d 253 (Pa.Cmwlth.1995); *Victor's Jewelers v. Workmen's Compensation Appeal Board (Bergelson)*, 145 Pa.Cmwlth. 630, 604 A.2d 1127 (1992).

erable because disability is presumed to continue until demonstrated otherwise. *Giant Eagle v. Workmen's Compensation Appeal Board (Chambers)*, 161 Pa.Cmwlth. 35, 635 A.2d 1123 (1993).

In this instance, WCJ found that Employer's medical witness, Dr. Didizian, "opined [that] the Claimant had fully recovered from her employment injury," (Finding of Fact No. 15), and "that he released Claimant to return to a light-duty position *only* because she had been out of the work force for a lengthy period of time, with a gradual return to her full duties." (Emphasis added.) (Finding of Fact No. 16.)

After careful review of the record, we agree with the Claimant that the record does not support the WCJ's finding that Dr. Didizian opined that the Claimant fully recovered from the employment injury.

In determining whether or not the medical evidence supports a termination of benefits where the Claimant's subjective complaints of pain are not supported by objective medical findings, our Supreme Court in *Udvari*, stated that an employer meets the burden of proof in a termination petition when:

> ... [A]n employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, *can return to work without restrictions* and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper. [Emphasis added.]

We emphasize that the failure of the employer's expert to employ these "magic words" is not fatal to the employer's claim. Instead, the expert testimony must be reviewed in its entirety to determine whether the conclusions reached are sufficient to warrant termination of benefits. *See Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, [132 Pa. Cmwlth. 47] 571 A.2d 1108 (Pa.Cmwlth. 1990) (physician need not say magic words that claimant was "fully recovered;" sufficient that physician testified to releasing claimant to work without restrictions because work-related injury was resolved). *Udvari*, 550 Pa. at 327, 705 A.2d at 1293 and n. 3.

In the instant case, Employer's medical witness, Dr. Didizian, did not plainly or clearly opine that the Claimant had "fully recovered." However, Dr. Didizian testified sufficiently to meet every *Udvari* criteria, *except* returning to work without restriction, including going so far as to release the Claimant to only light duty work.[6]

Clearly, Dr. Didizian did not opine that Claimant could return to work without restriction, as required by *Udvari*. The court acknowledges that in *Broughton v. Workers' Compensation Appeal Board (Disposal Corp. of America)*, 709 A.2d 443 (Pa.Cmwlth.1998), this court found that, even though employer's medical witness, also Dr. Didizian, did not speak "magic words" such as "fully recovered," when taking his testimony as a whole, Dr. Didizian in that case rendered an un-

**6.** Dr. Didizian's August 14, 1991 medical report and his testimony regarding that report restricts Claimant's physical limitations to sitting for only 5 of 8 hours; standing for only 2 of 8 hours; waking for only 2 of 8 hours; never lifting or carrying more than 25 pounds; occasionally lifting or carrying 11–25 pounds; frequently lifting and carrying 1–10 pounds. None of the lifting or carrying was indicated "No Restriction," although "No Restriction" was one option available to Dr. Didizian. Additional restrictions listed by Dr. Didizian are bending only occasionally; climbing only occasionally; never crawling; and kneeling only occasionally. All of the physical capacities have "frequently" and "no restriction" listed as options, however, Dr. Didizian chose to indicate restrictions to Claimant's physical capa-

bilities. Further restrictions noted by Dr. Didizian (when "Frequently" and "No Restriction" are also available options) are driving only occasionally and only an automatic transmission vehicle.

Most importantly, however, Dr. Didizian had the opportunity to release Claimant to Very Heavy Work (lifting objects over 100 pounds and frequent lifting/carrying of 50 pounds or more and frequent walking/standing) or to Heavy Work (lifting 100 pounds, carrying 50 pounds and frequent walking/standing) or to Medium Work (lifting 50 pounds, carrying 25 pounds, frequent walking/standing), but chose to release Claimant to only Light Duty Work (lifting 20 pounds, carrying 10 pounds, occasionally walking/standing).

equivocal medical opinion meeting all the *Udvari* requirements.

This instance may be distinguished from *Broughton*. Although Employer's physician, Dr. Didizian, testified in this case that he found "no evidence of any evidence of residual injury of 10–30–1990," (Didizian, 8/16/92 N.T. at 15), this testimony is clearly inconsistent with and does not rehabilitate his medical opinions stated in his August 14, 1991 medical report, where he listed various restrictions to the Claimant in the Physical Capacities Checklist (Didizian, 8/16/92, Def. Ex. 2) to which he testified. He testimony is further equivocated by his opinion releasing the Claimant to only light duty, without ever *actually* releasing Claimant to full-duty. (Physical Capacities Checklist, Didizian 8/16/92 N.T., Def. Ex. 2).

■ WCJ erred by finding that Dr. Didizian opined that Claimant had fully recovered since Dr. Didizian released Claimant to light duty *only* because she had been out of the work force for a lengthy period of time, with gradual return to her full duties. Dr. Didizian's testimony reveals that while this was *one* reason for releasing Claimant to light duty, it was not the *only* reason; his alternative or additional reason being Claimant's subjective complaints.[7] Lack of an objective basis for pain does not in and of itself establish that disability has ended. *JAB Enterprises, Inc. v. Workmen's Compensation Appeal Board (Haehn)*, 79 Pa.Cmwlth. 638, 470 A.2d 210 (1984).

Therefore, the medical opinion by Employer's physician that there was no evidence of residual work injury is clearly equivocated by both the physical limitations placed on Claim-

ant by the physician in his Physical Capacities Checklist and the acknowledgment that Claimant still needs accommodations because of her subjective complaints of pain. This level of medical opinion is clearly not the unequivocal medical opinion required by the Supreme Court in *Udvari*, which requires the release of the Claimant to work without restriction

The restrictions outlined by the Employer's medical witness are so extreme that they clearly render her incapable of performing her full-duty job. These restrictions, coupled with the physician's ability to return Claimant to *only* light duty work (for whatever reason), leave the Employer short of medical evidence to support the opinion that Claimant is fully recovered from her injuries.[8] Employer has, therefore, not met its burden of proving that the Claimant has fully recovered. The evidence in the instant case more appropriately supports a suspension of benefits, however, such relief was not sought by the Employer.

■ The Act clearly does not provide for complete termination of benefits where the Claimant is released to light duty work *and* with physical restrictions. Taken as a whole, the medical evidence, which includes the testimony of the examining physician, Dr. Didizian, and his August 14, 1991 medical report restricting Claimant to only light duty work does not support a finding that the Claimant is fully recovered or can return to work without restriction. Therefore, the WCJ erred in finding that the Employer's medical witness opined that the Claimant was fully

---

7. 8/16/92 Deposition testimony of Dr. Didizian:

Q. And can you explain what this document is?
A. This is a document dated 8–14–1991. Subsequent to my evaluation of the patient that day. And I provided those physical capacities as a starting point to get her back to her employment as of light work.
Q. To a reasonable degree of medical certainty, again, based upon your evaluation what was the etiology of the restrictions?
A. The etiology of the restrictions were on the basis of the fact that she has been out of work for 10 months. And it has been my private practice to send patients back on a gradual

basis and somehow also on the basis of some of her subjective complaints.
Q. What, if any, relation did it have to the work injury?
A. None.

8. We note that, although Claimant contends that the termination of Claimant's benefits should be denied because Employer failed to demonstrate work availability for Claimant. If the Employer had established that all disability related to the work injury had ceased, the Employer is not required to establish work availability for a termination of benefits. *Laird v. Workmen's Compensation Appeal Board (Michael Curran & Assocs.)*, 137 Pa.Cmwlth. 206, 585 A.2d 602 (1991).

recovered or in finding Claimant to be fully recovered.

For the reasons stated in this opinion, we reverse the Board's order affirming the WCJ's termination of the Claimant's benefits and order the Board to reinstate Claimant's benefits from the date of termination until such benefits have been or will be properly suspended or terminated by a supersedeas, supplemental agreement or final receipt or, if none of record for this Claimant, to continue until properly suspended or terminated in a subsequent proceeding.[9]

The court acknowledges that the WCJ denied the Employer's request for supersedeas only after he terminated the Claimant's benefits and that the Employer properly withdrew its modification petition in response to the Claimant's benefits being terminated. Employer should not be punished economically for respecting the court's administration of this claim. Additionally, Claimant has appealed the withdrawal of the Modification Petition.

Consequently, the Board's order affirming the WCJ's granting the Employer's withdrawal of its Modification Petition is vacated. Additionally, the order of the WCJ denying the Employer's supersedeas is vacated. The matter of the Employer's Modification Petition and a supersedeas relating thereto is remanded to the Board for proceedings on the merits of both a modification of benefits and a supersedeas relating thereto in light of the reinstatement of the Claimant's benefits. The Board and WCJ shall proceed consistent with this opinion and the attached order.

### ORDER

NOW, October 30, 1998, the decision of the Workers' Compensation Appeal Board at No. A95–3010 (affirming the Employer's withdrawal of its Modification Petition) is hereby vacated. The case is remanded to the Board for proceedings on the modification of Claimant Ella Thompson's benefits consistent with this opinion.

9. The Employer is not precluded from re-litigating Claimant's disability in a subsequent modification, suspension or termination petition, even if the medical witness testifies there is no change in Claimant's condition since the date of the

However, the order of the Workers' Compensation Appeal Board at A95–2578 (terminating benefits) is hereby reversed and the benefits of Claimant, Ella Thompson, shall be reinstated in accordance with this opinion.

Jurisdiction relinquished.

filing of the instant termination petition, as outlined in *King v. Workmen's Compensation Appeal Board (K–Mart Corp.)*, 549 Pa. 75, 700 A.2d 431 (1997).